UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAWS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 1:23-cv-03134-LGS |
| v. ) | |
| ) | |
| THE INDIVIDUALS, CORPORATIONS, ) | |
| LIMITED LIABILITY COMPANIES, ) | |
| PARTNERSHIPS, AND ) | |
| UNINCORPORATED ASSOCIATIONS ) | |
| IDENTIFIED ON SCHEDULE A HERETO, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II. RELEVANT FACTS AND PROCEEDINGS .................................................................. 2

III. ARGUMENT .................................................................................................................. 4

    A. Jurisdiction and Venue Are Proper in This Court. ..................................................... 4

    B. Plaintiff Has Met the Requirements for Entry of Default. ....................................... 5

    C. Plaintiff Has Met the Requirements for Entry of Default Judgment. ...................... 6

        1. Copyright Infringement .................................................................................. 6

        2. Trademark Infringement and Counterfeiting ............................................. 7

        3. False Designation of Origin ........................................................................ 8

    D. Plaintiff Is Entitled to Monetary Damages and Injunctive Relief. .......................... 9

        1. Statutory Damages Are Appropriate in This Case. .................................... 9

        2. Defaulting Defendants' Counterfeiting Was Willful. ............................... 10

        3. A High Statutory Damages Award Is Appropriate and Just. .................... 11

        4. Plaintiff Is Entitled to Injunctive Relief. .................................................. 13

IV. CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

Cases

*All-Star Marketing Group, LLC v. Media Brands Co., Ltd.*,
    775 F.Supp.2d 613 (S.D.N.Y. 2011)...............................................................................11

*Antsy Labs, LLC et al. v. The Individuals, et al.*,
    No. 21-cv-06123-JSR ....................................................................................................13

*BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*,
    408 F.Supp.3d 508 (S.D.N.Y. 2019)..................................................................................8

*Burberry Ltd. v. Euro Moda, Inc.*,
    2009 WL 4432678 (S.D.N.Y. Dec. 4, 2009) ...................................................................11

*Coach, Inc. v. Ocean Point Gifts*,
    No. CIV.A.09-4215 JBS, 2010 WL 2521444 (D.N.J. June 14, 2010)....................................12

*Enzerink v. Cranbury Overseas Limited Liability Company*,
    2021 WL 1073575 (E.D.N.Y. Feb. 26, 2021)...................................................................10

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)..........................................................6

*First Technology Capital, Inc. v. Airborne, Inc.*,
    378 F.Supp.3d 212 (W.D.N.Y. 2019) .................................................................................8

*Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co.*,
    807 F.2d 1110 (2nd Cir. 1986)........................................................................................12

*Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*,
    973 F.2d 155 (2nd Cir. 1992).............................................................................................6

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
    315 F.Supp.2d 511 (S.D.N.Y. 2004)................................................................................12

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
    826 F.3d 27 (2nd Cir. 2016)...............................................................................................8

*Licci v. Lebanese Canadian Bank*,
    732 F.3d 161 (2d Cir. 2013)...............................................................................................4

*Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd*,
    2013 WL 174226 (S.D.N.Y. Jan. 17, 2013) ....................................................................10

*Montcalm Pub. Corp. v. Ryan*,
    807 F. Supp. 975 (S.D.N.Y. 1992) ....................................................................................6

*Off-White LLC v. Adagio*,
    2020 WL 1646673 (S.D.N.Y. Apr. 3, 2020) ............................................................. 5, 12

*Petmed Express, Inc. v. medpets.com, Inc.*,
    336 F. Supp. 2d 1213 (S.D. Fla. 2004) ........................................................................ 10

*Phillip Morris USA Inc. v. Marlboro Express*,
    No. CV-03-1161 (CPS), 2005 WL 2076921 (E.D.N.Y. Aug. 26, 2005) ................. 12, 13

*Salinger v. Coking*,
    607 F.3d 68 (2nd Cir. 2010) ........................................................................................ 13

*Salvatore Ferragamo S.p.A. v. Does 1-56*,
    2020 WL 774237 (S.D.N.Y. Feb. 18, 2020) .................................................................. 8

*Sara Lee v. Bags of New York, Inc.*,
    36 F. Supp. 2d 161 (S.D.N.Y. 1999) ............................................................................ 10

*Spin Master Ltd. v. Alan Yuan's Store*,
    325 F.Supp.3d 413 (S.D.N.Y. 2018) .............................................................................. 8

*The North Face Apparel Corp. v. Moler*,
    2015 WL 4385626 (S.D.N.Y. July 16, 2015) .............................................................. 11

*Tiffany (NJ) Inc. v. Luban*,
    282 F.Supp.2d 123 (S.D.N.Y. 2003) ............................................................................ 11

*Trebco Speciality Prods., Inc. v. The Individuals, et al.*,
    No. 22-cv-00655-ER, Dkt. No. 63 ............................................................................... 13

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    800 F.Supp. 2d 515 (S.D.N.Y. 2011) ........................................................................... 13

*WowWee Group, Ltd. v. Meirly*,
    No. 18-cv-706, 2019 WL 1375470 (S.D.N.Y. Mar. 27, 2019) ...................................... 5

*Zuru (Singapore) PTE., Ltd. et al. v. The Individuals, et al.*,
    No. 21-cv-08101-DLC, Dkt. No. 51 ............................................................................ 13

**Statutes**

15 U.S.C. § 1051 et seq. ......................................................................................................... 4

15 U.S.C. § 1114 .................................................................................................................... 5

15 U.S.C. § 1117(c) ........................................................................................................ 10, 13

15 U.S.C. § 1117(c)(1) ......................................................................................................... 10

15 U.S.C. § 1117(c)(2) ..................................................................................................10, 13

15 U.S.C. § 1117(e) ............................................................................................................11

15 U.S.C. § 1125(a) ..........................................................................................................5, 8

17 U.S.C. § 101 et seq. .....................................................................................................4, 5

17 U.S.C. § 501(b) ................................................................................................................7

17 U.S.C. § 504(c)(1) ...........................................................................................................9

17 U.S.C. § 504(c)(2) ...........................................................................................................9

28 U.S.C. § 1331 ..................................................................................................................4

28 U.S.C. § 1338(a)-(b) .......................................................................................................4

28 U.S.C. § 1367(a) .............................................................................................................4

28 U.S.C. § 1391 ..................................................................................................................4

Fed R. Civ. P. 4(f)(3) ........................................................................................................1, 3

Fed. R. Civ. P. 12(a)(1)(A) ...............................................................................................2, 6

Fed. R. Civ. P. 55 .................................................................................................................2

Fed. R. Civ. P. 55(a)(b)(2) ...............................................................................................5, 6

**MEMORANDUM OF LAW**

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff KAWS, Inc. brought this action against the Defendants identified on Schedule A to the Complaint (collectively, the "Defendants") for promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit products in connection with Plaintiff's federally registered trademarks and/or copyright works (collectively, the "Counterfeit/Infringing Products"), through various fully interactive commercial Internet websites operating under at least the Defendant Domain Names and Online Marketplace Accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores").

On April 14, 2023, the Court granted the Temporary Restraining Order ("TRO"). [Dkt. No. 20]. On April 21, 2023, the Court extended the TRO through May 12, 2023. [Dkt. No. 23]. On May 12, 2023, the Court granted and entered the Preliminary Injunction Order, which gave Plaintiff permission to serve Defendants using the alternative methods of service under Fed R. Civ. P. 4(f)(3). [Dkt. No. 28 at ¶ 9].

The Court authorized Plaintiff to provide notice of these proceedings and perfect service of the complaint to Defendants by electronically publishing a link to the Summons, Complaint, and the TRO, on a website or by sending an email to any email addresses provided for Defendants by third parties that includes a link to said website and the Summons and Complaint. *See* Declaration of Christopher Tom (hereinafter "Tom Decl.") at ¶ 6.

Since the entry of the TRO, the Defendants have received notice of this case and the filings in this case via (1) notices from the third-party platforms for which the Defendants maintain accounts, including Amazon, DHgate, eBay, etsy, Redbubble, Walmart, and Wish, (2) service via email from Plaintiff's counsel on May 9, 2023, and (3) publication on a website (http://kaws-cases.com/case-23-cv-03134.html) to which the Defendants were provided access upon service of the summons and notified that all relevant documents in the case would be published. *See* Tom Decl. at ¶¶ 6-11.

The remaining Defendants, except for those that are negotiating in good faith for settlement, have failed to plead or otherwise defend this action within the allotted time in violation of Fed. R. Civ. P. 12(a)(1)(A). Accordingly, Plaintiff submits this memorandum in support of its Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the Defendants Identified in the First Amended Schedule A, being all of the Defendants in this case except for those voluntarily dismissed by Plaintiff and Defendants in the process of settling with Plaintiff (collectively, the "Defaulting Defendants").

## II. RELEVANT FACTS AND PROCEEDINGS

Artist and designer Brian Donnelly takes pride in the KAWS products, which have acquired national and worldwide fame and recognition because of their unique and novel designs. [*See* Complaint, Dkt. 1 at ¶ 25.] Since the initial launch of Plaintiff's original KAWS brand products (the "KAWS Products"), the KAWS marks are and have been the subject of substantial and continuous marketing and promotion by Plaintiff. [*Id.* at ¶ 31.] Plaintiff has and continues to widely market and promote the KAWS trademarks in the industry and to consumers. [*Id.*] Plaintiff's promotional efforts include — by way of example but not limitation — the KAWS website (https://kawsone.com/), Mr. Donnelly's exclusive representation by Skarstedt Gallery, social media sites such as Instagram, and by showing works at international art fairs such as Art Basel Miami Beach. [*Id.*] Long before Defendants' acts described herein, Plaintiff launched the KAWS products and obtained U.S. Trademark Registration Nos. 6,046,763, 6,047,656, 6,102,259, 6,102,260, and 6,116,829 (together, the "KAWS Trademarks"). [*See id.* ¶ 1.] The U.S. registration for the KAWS Trademarks are valid, subsisting, and in full force and effect. [*Id.* at ¶ 2.]

Further, Plaintiff KAWS, Inc. owns all exclusive rights in various copyrights for the KAWS products including without limitation copyrights covered by U.S. Copyright Office Registration Nos. VA 2-180-272 and VA 2-182-652 (together, the "KAWS Copyright Registrations"). [*See id.* at ¶ 1.]

On information and belief, Defaulting Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import,

distribute, offer for sale, and sell products bearing infringing and/or counterfeit versions of one or more of the KAWS Trademarks and/or embodying the KAWS Copyright Registrations (the "Counterfeit/Infringing Products") in the same transaction, occurrence, or series of transactions or occurrences. [*See id.* ¶¶ 3-5.] Defaulting Defendants conduct business throughout the United States, including within the State of New York and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defaulting Defendant Domain Names and Defaulting Online Marketplace Accounts (collectively, the "Defaulting Defendant Internet Stores") identified in Schedule A. [*Id.* at ¶ 53.] Each Defaulting Defendant targets the United States, including New York, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit/Infringing Products to consumers within the United States, including the State of New York. [*Id.* ¶ 17, 54.]

Plaintiff filed this action on April 14, 2023. [Dkt. No. 1.] On April 14, 2023, the Court granted the Temporary Restraining Order ("TRO"). [Dkt. No. 20]. On April 21, 2023, the Court extended the TRO through May 12, 2023. [Dkt. No. 23]. On May 12, 2023, the Court granted and entered the Preliminary Injunction Order, which gave Plaintiff permission to serve Defendants using the alternative methods of service under Fed R. Civ. P. 4(f)(3). [Dkt. No. 28 at ¶ 9].

The Court permitted Plaintiff to complete service of process by electronic publication on a website and by sending an email to the email addresses identified by Plaintiff and any email addresses provided for Defendants by third parties. *Id.* The Defaulting Defendants identified in the First Amended Schedule A were properly served and have received notice of this case and the filings in this case via (1) notices from the third-party payment platforms for which the Defaulting Defendants maintain accounts – Amazon, DHgate, eBay, etsy, Redbubble, Walmart, and Wish, (2) service via email from Plaintiff's counsel on May 9, 2023, and (3) publication on a website (http://kaws-cases.com/case-23-cv-03134.html) to which the Defendants were provided access to upon service of the summons and notified that all relevant documents in the case would be published. *See* Tom Decl. at ¶¶ 6-12, Exs. 7, 8. None of the Defaulting Defendants has entered an appearance or otherwise defended this action. Tom Decl. at ¶ 13.

## III. ARGUMENT

### A. Jurisdiction and Venue Are Proper in This Court.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, the Copyright Act, and supplemental jurisdiction. 15 U.S.C. § 1051 et seq.; 28 U.S.C. § 1338(a)-(b); 28 U.S.C. § 1331; 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1367(a). Venue is proper in this Court pursuant to, inter alia, 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defaulting Defendants because each of the Defaulting Defendants directly targets business activities toward consumers in New York and causes harm to Plaintiff's business within this Judicial District. [*See* Dkt. No. 1 at ¶ 17.] Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in their favor. *See Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 176 (2d Cir. 2013) ("In evaluating whether the requisite showing has been made, we construe the pleadings and any supporting materials in the light most favorable to the plaintiffs.").

Through at least the fully interactive commercial Internet websites and online marketplace accounts operating under the Defaulting Defendant Internet Stores, each of the Defaulting Defendants has targeted sales from New York residents by operating websites and/or online marketplace accounts that offer shipping to the United States, including New York and, on information and belief, has sold Counterfeit/Infringing Products to residents within the United States, including New York. [Dkt. No. 1 at ¶ 17.] Many of the websites look sophisticated and accept payment in U.S. Dollars via credit cards, Western Union and PayPal. [*Id.* at ¶ 39.] Further, Plaintiff presented screenshot evidence that each Defaulting Defendant Internet Store is reaching out to do business with New York residents by operating one or more commercial, interactive Internet Stores through which New York residents can and do purchase products using counterfeit versions of Plaintiff's trademark and/or copyrights, which include screenshot evidence confirming that each Defaulting Defendant Internet Store does stand ready, willing, and able to ship its counterfeit goods to customers in New York. [*See* Dkt No. 16.]

4

As such, personal jurisdiction is proper since each of the Defaulting Defendants is committing tortious acts in New York, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of New York, and this Court, in addressing similar allegations of Internet-based counterfeiting, have confirmed. *See, e.g., WowWee Group, Ltd. v. Meirly*, No. 18-cv-706, 2019 WL 1375470, at *4 (S.D.N.Y. Mar. 27, 2019) (finding personal jurisdiction over defaulting defendants based on screenshots of completed checkout pages, including over defendants that had not been shown to make sales into New York, and observing that "the case law has stopped short of requiring additional conduct beyond maintaining an interactive website that offers products to consumers"); *Off-White LLC v. Adagio,* 2020 WL 1646673, *7 (S.D.N.Y. Apr. 3, 2020).

### B. Plaintiff Has Met the Requirements for Entry of Default.

Pursuant to the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On April 14, 2023 Plaintiff filed the Complaint alleging, among other claims, copyright infringement, 17 U.S.C. § 101, et seq. (Count I), federal trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count II), and false designation of origin, 15 U.S.C. § 1125(a) (Count III). [Dkt. 1.] The Defaulting Defendants were properly served and received notice of this case and the filings in this case as ordered by the Court via (1) notices from the third-party platforms for which the Defendants maintain accounts, including Amazon, DHgate, eBay, etsy, Redbubble, Walmart, and Wish (2) service via email from Plaintiff's counsel on May 9, 2023, and (3) publication on a website (http://kaws-cases.com/case-23-cv-03134.html) to which the Defendants were provided access upon service of the summons and notified that all relevant documents in the case would be published. *See* Tom Decl. at ¶¶ 6-12, Exs. 7, 8.

Despite having been served with process, the Defaulting Defendants have ignored these proceedings and failed to plead or otherwise defend this action. Tom Decl. at ¶ 13. Accordingly, Plaintiff asks for entry of default against the Defaulting Defendants.

### C. Plaintiff Has Met the Requirements for Entry of Default Judgment.

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each claim alleged in the complaint. *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2nd Cir. 1992). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each claim in the complaint. *Montcalm Pub. Corp. v. Ryan,* 807 F. Supp. 975, 977 (S.D.N.Y. 1992).

More than twenty-one (21) days have passed since Defaulting Defendants were served, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants identified in the First Amended Schedule A. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate and consistent with previous similar cases in front of this Court, and Plaintiff requests an award of statutory damages for willful trademark infringement and/or copyright infringement against each of the Defaulting Defendants and a permanent injunction based on the unrefuted allegations in the Complaint and the evidentiary record which supported the issuance of the TRO.

#### 1. Copyright Infringement

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991).

Here, Plaintiff owns all exclusive rights in various copyrights for the KAWS products including without limitation copyrights covered by the KAWS Copyright Registrations. [Dkt. No. 1 at ¶ 59.]; *see* 17 U.S.C. § 501(b) (stating legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement).

Additionally, Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the KAWS copyrights without Plaintiff's permission and that embody the entirety of the KAWS Copyright Registrations. [Dkt. No. 1 at ¶¶ 60-62]. As a visual representation, Defendants have directly copied Plaintiff's copyrights for the KAWS products (including by advertising and/or selling products embodying the entirety or alternatively at least a substantial part of the KAWS Copyright Registrations), or, alternatively, Defendants' representations of Plaintiff's copyrights for the KAWS products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's copyrights for the KAWS products and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the KAWS products. [*Id.* ¶ 62.] As just one example, Defendants deceive unknowing consumers by using the KAWS copyrights without authorization within the product descriptions of their Defendant Online Store to attract customers as follows:

  

[*Id.* at ¶ 63.] It is clear that Defendants have copied Plaintiff's copyrights without Plaintiff's consent.

2. <u>Trademark Infringement and Counterfeiting</u>

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) the plaintiff's mark is entitled to protection and (2) defendant's use of the mark is likely to cause confusion. *Guthrie Healthcare Sys. v. ContextMedia,*

7

*Inc.,* 826 F.3d 27, 37 (2nd Cir. 2016); *Spin Master Ltd. v. Alan Yuan's Store,* 325 F.Supp.3d 413, 420 (S.D.N.Y. 2018); *BBK Tobacco & Foods, LLP v. Galaxy VI Corp*., 408 F.Supp.3d 508, 520 (S.D.N.Y. 2019).

Plaintiff alleged in the Complaint that the KAWS Trademarks are highly distinctive, that Defaulting Defendants have knowledge of Plaintiff's rights in the KAWS Trademarks, that Defaulting Defendants are not authorized to use the KAWS trademarks, and that Defaulting Defendants' use of the KAWS Trademarks causes a likelihood of confusion. [*See* Dkt. No. 1 at ¶¶ 74-76.] Since the Defaulting Defendants have failed to respond or otherwise plead in this matter, "the Court will accept as true the allegations of the complaint that establish the defaulting [defendant's] liability." *First Technology Capital, Inc. v. Airborne, Inc.,* 378 F.Supp.3d 212, 217 (W.D.N.Y. 2019) (*quoting Am. Fruit & Vegetable Co. v. Ithaca Produce, Inc.,* 848 F.Supp.2d 375, 377 (W.D.N.Y. 2011)). Accordingly, Plaintiff requests entry of judgment with respect to Count I for willful infringement and counterfeiting of the KAWS Trademarks against the Defaulting Defendants.

### 3. False Designation of Origin

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a valid, protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *Salvatore Ferragamo S.p.A. v. Does 1-56*, 2020 WL 774237, at *2 (S.D.N.Y. Feb. 18, 2020). This is the same test used for a trademark infringement claim under the Lanham Act. *See Spin Master,* 325 F.Supp.3d at 423.

Plaintiff alleged in the Complaint that Defaulting Defendants are using the federally registered KAWS Trademarks without authorization on the Counterfeit/Infringing Products. This creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defaulting Defendants' Counterfeit/Infringing Products by Plaintiff. [*See* Dkt. No. 1 at ¶¶ 81-83.] As a result, Plaintiff requests entry of judgment with respect to Count III for willful false designation of origin against the Defaulting Defendants.

**D.     Plaintiff Is Entitled to Monetary Damages and Injunctive Relief.**

The awarding of statutory damages serves dual interests in that it is remedial in nature but also intended to protect an important public interest. Given the broader economic losses and harm to the job market caused by counterfeiting, coupled with the possible dangers to consumers who are tricked into purchasing low quality, counterfeit products over the Internet, it is important to both penalize defendants and try to deter future violations. Here, Plaintiff advertises throughout the world and spends considerable resources marketing and protecting its various intellectual property rights and associated products, and in particular the KAWS Trademarks and KAWS Copyright Registrations in respect of the genuine KAWS products. Plaintiff's promotional efforts include – by way of example but not limitation – the KAWS website (https://kawsone.com/), Mr. Donnelly's exclusive representation by Skarstedt Gallery, social media sites such as Instagram, and by showing works at international art fairs such as Art Basel Miami Beach. [*Id.* at ¶ 31.]

1.     Statutory Damages Are Appropriate in This Case.

Pursuant to the statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c), a plaintiff may elect to receive, per work, "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). When the infringement is found to be willful, the Copyright Act provides for statutory damages of up to "not more than $150,000." 17 U.S.C. § 504(c)(2).

Pursuant to the statutory damages provision of the Lanham Act, a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, the Lanham Act provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting

15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). In *Sara Lee*, 36 F. Supp. 2d at 170, the court awarded statutory damages in the amount of $750,000 after estimating the defendants' ill-gotten gains and trebling them to "deter and punish a willful continuous course of infringements and defiance of the judicial process." The *Sara Lee* analysis included seven factors: (1) the profits made by the defendants; (2) the revenues lost by plaintiff; (3) the value of the mark; (4) the deterrent effect on others; (5) whether the conduct was innocent or willful; (6) whether a defendant has cooperated in providing records; and (7) the deterrent effect on the defendant.

The lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *See Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd*, 2013 WL 174226, at *2-3 (S.D.N.Y. Jan. 17, 2013); *Petmed Express, Inc. v. medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004). Likewise, Courts have recognized that statutory damages can be awarded without requiring an evidentiary hearing. *See Enzerink v. Cranbury Overseas Limited Liability Company,* 2021 WL 1073575, at *4 (E.D.N.Y. Feb. 26, 2021).

### 2. Defaulting Defendants' Counterfeiting Was Willful.

Defaulting Defendants facilitate sales by designing the Defaulting Defendant Internet Stores so that they appear to unknowing consumers to be authorized online sellers of genuine products. [Dkt. No. 1 at ¶ 39.] Pursuant to 15 U.S.C. § 1117(e), a counterfeiting violation is presumed willful "for purposes of determining relief if the violator . . . knowingly provided . . . materially false contact information to a domain name registrar . . . ." 15 U.S.C. § 1117(e). Many of the Defaulting Defendants' names and physical addresses used to register the Defaulting Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. [Dkt. No. 1 at ¶ 43.] Thus, **willfulness is presumed** in the instant case under 15 U.S.C. § 1117(e).

Even without the statutory presumption, it is clear that Defaulting Defendants' counterfeiting was willful. "Infringement is willful when the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Burberry Ltd. v. Euro Moda, Inc.,* 2009 WL 4432678, at *3 (S.D.N.Y. Dec. 4, 2009) (internal quotations and citation omitted). Indeed, willfulness may be established by a defendant's default. *All-Star Marketing Group, LLC v. Media Brands Co., Ltd*., 775 F. Supp. 2d 613, 621 (S.D.N.Y. 2011) (citing cases). In awarding statutory damages, the Court is not required to follow any rigid formula. *See Id.* at 622. The Court may consider various factors including "the value of the trademark," "the deterrent effect on others besides defendant," and "whether the defendant's conduct was willful or innocent." *Id*. (internal quotation marks and citation omitted).

Here, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Plaintiff's rights in the KAWS Trademarks and KAWS Copyright Registrations, especially given Plaintiff's extensive promotional efforts discussed above. After all, the Defaulting Defendants were taking great pains to conceal their identities to try to avoid being held accountable for their counterfeiting activities. [*See* Dkt. No. 1 at ¶ 43-44.]

Finally, District Courts have deemed counterfeiting willful when defendants default. *See*, *e.g., The North Face Apparel Corp. v. Moler,* 2015 WL 4385626, at *6 (S.D.N.Y. July 16, 2015) (citing cases); *Tiffany (NJ) Inc. v. Luban,* 282 F.Supp.2d 123, 124 (S.D.N.Y. 2003).

   3. <u>A High Statutory Damages Award Is Appropriate and Just.</u>

The Second Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c), which is also utilized in trademark infringement cases, is articulated in *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co.,* 807 F.2d 1110, 1117 (2nd Cir. 1986). In computing the award amount, a court may consider factors such as "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to

assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Gucci America, Inc. v. Duty Free Apparel, Ltd*., 315 F.Supp.2d 511, 520 (S.D.N.Y. 2004) (*quoting Fitzgerald Pub. Co*., 807 F.2d at 1117). Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *See e.g., Off-White LLC v. Adagio,* 2020 WL 1646673, at *7 (S.D.N.Y. Apr. 3, 2020) (report and recommendation adopted as modified by 2020 WL 3050383 (S.D.N.Y. June 8, 2020)).

In addition, courts have awarded high damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *Id.* ("[t]he need to deter other counterfeiters is particularly compelling given the apparent extent of counterfeit activity"); *see also Coach, Inc. v. Ocean Point Gifts*, No. CIV.A.09-4215 JBS, 2010 WL 2521444, at *6 (D.N.J. June 14, 2010) (high damage awards in counterfeit cases were "due in part to the wide market exposure that the Internet can provide").

Additionally, the remedy imposed under the statute must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Off-White LLC,* 2020 WL 1646673 at *7 ("A substantial award is necessary to discourage the Defaulting Defendants from continuing to engage in their illicit conduct.") For example, in *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers . . . plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." *Phillip Morris USA Inc. v. Marlboro Express*, No. CV-03-1161 (CPS), 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005).

Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Plaintiff respectfully requests an award of one hundred fifty thousand dollars ($150,000.00) per Defaulting Defendant for which Plaintiff has alleged a trademark claim. Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 17 U.S.C.

§ 504(c), Plaintiff respectfully requests an award of one hundred fifty thousand dollars ($150,000.00) per Defaulting Defendant for which Plaintiff has alleged a copyright claim. A damages award of $150,000 per Defaulting Defendant is consistent with recent awards in analogous cases in this District. *See, e.g.*, *Trebco Speciality Prods., Inc. v. The Individuals, et al.*, No. 22-cv-00655-ER, Dkt. No. 63 (default judgment in counterfeiting case awarding statutory damages of $150,000 from each Defaulting Defendant); *Antsy Labs, LLC et al. v. The Individuals, et al.*, No. 21-cv-06123-JSR (same); *Zuru (Singapore) PTE., Ltd. et al. v. The Individuals, et al.*, No. 21-cv-08101-DLC, Dkt. No. 51 (same).

4. <u>Plaintiff Is Entitled to Injunctive Relief.</u>

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiff's registered trademark rights in the KAWS Trademarks and copyright rights in its KAWS Copyright Registrations, including at least all injunctive relief previously awarded by this Court to Plaintiff in the TRO. Plaintiff is also entitled to injunctive relief so it can quickly take action against any new websites and online marketplace accounts that are identified, found to be linked to Defaulting Defendants, and selling Counterfeit/Infringing Products. *See Salinger v. Coking*, 607 F.3d 68, 77-78 (2nd Cir. 2010); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc*., 800 F.Supp. 2d 515, 539 (S.D.N.Y. 2011).

## IV. **CONCLUSION**

Plaintiff respectfully requests that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of one hundred fifty thousand dollars ($150,000.00) per Defaulting Defendant, and enter a permanent injunction order prohibiting Defaulting Defendants from selling Counterfeit/Infringing Products, permanently disabling the domain names used by Defaulting Defendants to sell Counterfeit/Infringing Products, and transferring all assets in Defaulting Defendants' financial accounts to Plaintiff consistent with the Proposed Judgment submitted with this Motion.

Dated: July 6, 2023	Respectfully submitted,

By: */s/ Christopher Tom*

Christopher Tom
THOITS LAW
400 Main Street, Suite 250
Los Altos, CA 94022
(650) 327 4200
ctom@thoits.com

Shannon Joyce Prince
BOIES SCHILLER FLEXNER
333 Main St.
Ste 121
Armonk, NY 10504
914-749-8289
sprince@bsfllp.com

*Attorneys for Plaintiff KAWS, Inc.*